UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MELISSA WALKER,

                Plaintiff,

                                                        **Hon. Hugh B. Scott**

                v.

                                                        **16CV752V**

                                                          **Report**

NANCY A. BERRYHILL[1], Acting                 **and**
Commissioner of Social Security,               **Recommendation**

                Defendant.

      Before the Court are the parties' respective motions for judgment on the pleadings (Docket No. 13 (plaintiff); see Docket No. 16 (defendant Commissioner's memorandum in opposition[2])).

## INTRODUCTION

      This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits and/or Supplemental Security Income benefits.

---

    [1]Nancy A. Berryhill is now the Acting Commissioner of Social Security.   Pursuant to Federal Rule of Civil Procedure 25(d)(1), Ms. Berryhill is substituted for former Acting Commissioner Carolyn W. Colvin as Defendant in this action; no further action is required, 42 U.S.C. § 405(g).

    [2]Defendant did not file a Notice of Motion but in her Memorandum defendant seeks entry of judgment on the pleadings, Docket No. 16.

**PROCEDURAL BACKGROUND**[3]

The plaintiff ("Melissa Walker" or "plaintiff") filed an application for disability insurance benefits on April 25, 2012, and for supplemental security income on April 28, 2012 (R. 10). Those applications were denied initially. The plaintiff appeared before an Administrative Law Judge ("ALJ"), who considered the case de novo and concluded, in a written decision dated February 13, 2015, that the plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on July 20, 2016, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on September 19, 2016 (Docket No. 1). The parties moved for judgment on the pleadings (Docket No. 13; see also Docket No. 16). Technically, defendant Commissioner has not moved for judgment, but in her memorandum she asks for judgment on the pleadings (e.g., Docket No. 16, Def. Memo. at 1); the memorandum here will be deemed, nunc pro tunc, as defendant's motion for judgment on the pleadings. Plaintiff replied (Docket No. 17) and the motions were deemed submitted on September 21, 2017 (Docket No. 15).

**FACTUAL BACKGROUND**

Plaintiff was born on March 19, 1987 (24 years old at the time of the hearing), and has completed high school (R. 25). Her work experience included last working on June 2011 as a shift manager and cashier at Wilson Farms (R. 18). Plaintiff lifted up to 50 pounds there but

---

[3]References noted as "(R.__)" are to the certified record of the administrative proceedings, filed with this Court as Docket No. 5.

complained of knee and back pain (R. 18). She also complained that she was unable to focus on the job (R. 18).

Plaintiff's severe impairments are major depressive disorder, anxiety disorder, and degenerative disc disease (R. 12). She claimed that she was bipolar and suffered from chronic back pain, depression, and knee pain tied to weather conditions (R. 16). She now argues that the ALJ failed to consider her obesity (Docket No. 13, Pl. Memo. at 15-16). During the period at issue, plaintiff weighed in the range of 197-213 pounds and had a body mass index ("BMI") between 33.8-37.4 (Docket No 13, Pl. Memo. at 3; R. 390, 397, 474, 489).

## MEDICAL AND VOCATIONAL EVIDENCE

As for plaintiff's mental impairments, the ALJ considered whether the criteria for Listings 12.04 and 12.06 were met (R. 14-15). On the "paragraph B" criteria for either Listing, plaintiff's activities of daily living showed mild restrictions, she has moderate difficulties in social functioning and in maintaining concentration, persistence, or pace, and she had no episodes of decompensation within one year (R. 14-15). Since she did not have two marked limitations or more episodes of decompensation, the ALJ found that "paragraph B" criteria were not met (R. 15). The ALJ then found that "paragraph C" criteria also were not met (R. 15).

According to plaintiff (Docket No. 13, Pl. Memo. at 2-6; cf. Docket No. 16, Def. Memo. at 1 (adopting plaintiff's statement of facts with ALJ's decision (R. 12-25)), prior to the alleged onset date of June 15, 2011 (R. 12), plaintiff was treated from 2000 to 2005 at Suburban Psychiatric Associates for cyclothymic disorder and attention deficit disorder (Docket No. 13, Pl. Memo. at 2; R. 248). Plaintiff was admitted to an inpatient psychiatric unit for anger issues from January 2-11, 2002 (Docket No. 13, Pl. Memo. at 2; R. 376). In January 2010, plaintiff

3

underwent open reduction and fixation of the left lateral malleolus fracture in the left ankle (Docket No. 13, Pl. Memo. at 2; R. 372).   During a psychiatric evaluation in April 2010 by Dr. Horacio Capote, plaintiff complained of depressive symptoms including periods of irritability and agitation, marked by getting by on very little sleep, distractibility, racing thoughts, loud speech, impulsiveness, and anxiety (Docket No. 13, Pl. Memo. at 2-3; R. 383).

From March 2011 through November 2012, plaintiff was treated at Pembroke Family Medicine for lumbago, pain joint lower leg, anxiety, depressive disorder, and attention deficit hyperactivity disorder ("ADHD") (Docket No. 13, Pl. Memo. at 3; R. 389-407, 409-10, 422-27, 465-73).   She had symptoms of back pain, nausea, left knee pain, hip pain, right ankle tenderness, interference with daily activities, fluctuating concentration and social anxiety (Docket No. 13, Pl. Memo. at 3; R. 389, 392, 404, 407, 422, 425, 473, 489).   Plaintiff's weight ranged from 197 to 213 pounds, and she had a body mass index ("BMI") range from 33.8 to 37.4 (Docket No. 13, Pl. Memo. at 3; R. 390, 397, 474, 489).

On June 14, 2012, internal medicine consultative examiner Dr. Samuel Balderman examined plaintiff (Docket No. 13, Pl. Memo. at 3; R. 416), noting that plaintiff complained of right ankle pain, knee pain, and lumbar spine pain (R. 416; Docket No. 13, Pl. Memo. at 3). Dr. Balderman noted that plaintiff had lumbar flexion on only 30 degrees, but suggested plaintiff's effort was "incomplete" (Docket No. 13, Pl. Memo. at 3; R. 418), while plaintiff was 5'4" tall, and weighed 234 pounds (R. 417; Docket No. 13, Pl. Memo. at 3).   Dr. Balderman diagnosed plaintiff with post ankle fracture and found that she had minimal limitations (Docket No. 13, Pl. Memo. at 3; R. 418).

On June 14, 2012, consultative psychological examiner Dr. Susan Santarpia, Ph.D., also examined plaintiff, identifying her symptoms as decreased appetite, dysphoric mood, hopelessness, and irritability (Docket No 13, Pl. Memo. at 3; R. 411). Dr. Santarpia diagnosed plaintiff as being bipolar, that she was mildly impaired in the ability to perform complex tasks independently, but found plaintiff otherwise was unimpaired to perform work (Docket No. 13, Pl. Memo. at 3, 11-12; R. 412, 414).

Plaintiff alternatively argues that she might be entitled to a closed period of benefits from August 14, 2012, to September 27, 2013 (Docket No. 13, Pl. Memo. at 12), requiring a close examination of her treatment and condition during that period. On August 14, 2012, plaintiff sought treatment at Dent Neurological Institute ("Dent"), with plaintiff's condition worsening (Docket No. 13, Pl. Memo. at 10-11; R. 411-15). Dent's psychiatrist Dr. Capote examined plaintiff (R. 456-60; Docket No. 13, Pl. Memo. at 4). She complained of sleep difficulties, panic episodes, anxiety, worry, distractibility, racing thoughts, impulsiveness, and difficulty staying focused (R. 456; Docket No. 13, Pl. Memo. at 4). She also complained of hallucinations related to her bipolar disorder for years, describing auditory hallucinations; paranoid ideation; and feeling overwhelmed (especially with the care of three young children, ages four months to seven years) (R. 456, 17-18; Docket No. 13, Pl. Memo. at 11). She reported an extensive history of emotional, physical, and sexual abuse growing up (R. 457; Docket No. 13, Pl. Memo. at 4). Dr. Capote diagnosed plaintiff for bipolar disorder, depressed; generalized anxiety disorder; morbid obesity (plaintiff then weighed 225 pounds and was 5 foot, 3 inches tall); chronic pain syndrome, and attention deficit disorder (R. 457, 458; Docket No. 13, Pl. Memo. at

5

4).   Dr. Capote found no evidence of hallucinations, but prescribed Symbyax 50 mg.-12 mg. capsule once per day (R. 458, 459).

On December 12, 2012, plaintiff had another examination by Allyson Vanecek, RPA-C, a registered physician's assistant with Dent, where plaintiff reported that her anxiety increased, hallucinations continued (but were rare), and she continued to have difficulties with her children (R. 528; Docket No. 13, Pl. Memo. at 4, 11).   Plaintiff had a PHQ-9 (for "Patient Health Questionnaire") score of 15 (of 27), indicating moderately severe depression (R. 528).   The Patient Health Questionnaire (what plaintiff called these "PSQ-9" in her memorandum, e.g., Docket No. 13, Pl. Memo. at 11) "is a self-administered version of the PRIME-MD diagnostic instrument for common mental disorders," Kurt Kroenke, Robert L. Spitzer, and Janet B.W. Williams, The PHQ-9, U.S. National Library of Medicine, National Institutes of Health, www.ncbi.nim.nih.gov/pmc/articles/PMC1495268 (last visited Dec. 21, 2017).   This assessment asks the patient nine questions about her mood, ability to concentrate, and whether she has suicidal thoughts, id., Appendix (nine-symptom checklist).   The scores range as follows:

| Total Score | Depression Severity |
|---|---|
| 1-4 | Minimal depression |
| 5-9 | Mild depression |
| 10-14 | Moderate depression |
| 15-19 | Moderately severe depression |
| 20-27 | Severe depression |

Id.   On December 12, 2012, Vanecek concluded that plaintiff had bipolar disorder, depressed, and increased plaintiff's dosage of Symbyax to 3 capsules totaling 75 mg. per day to help with plaintiff's auditory hallucinations, sleep, irritability, and anxiety (R. 529-30; Docket No. 13, Pl. Memo. at 4).

On March 25, 2013, plaintiff said that she was okay but reported hearing voices again (R. 532; Docket No. 13, Pl. Memo. at 11), as well as irritability and sleep difficulties (Docket No. 13, Pl. Memo. at 4; R. 532). Plaintiff noted that the increased dosage of Symbyax initially worked but then wore off (R. 532). Vanecek prescribed Abilify (R. 534; Docket No. 13, Pl. Memo. at 4); this medication can decrease hallucinations, WebMD, Abilify, www.webmd.com/drugs/2/drug-64439/abilify-oral/details (last visited Dec. 21, 2017). Plaintiff's PHQ-9 score that day was 10 (moderate depression). Plaintiff weighed 209 pounds and had a BMI of 37.02 (R. 533; Docket No. 13, Pl. Memo. at 4).

On May 13, 2013, plaintiff said that things were going well and she was less anxious (R. 536). She had recent suicidal thoughts, heightened anxiety, but had auditory hallucinations (but fewer than before); she had a PHQ 9 score of 13, indicative of moderate depression (Docket No. 13, Pl. Memo. at 4, 11; R. 536). Vanecek observed plaintiff's diminished concentration and a constricted affect (Docket No. 13, Pl. Memo. at 4; R. 536, 22). Plaintiff then reported, "things are going well" (R. 536, 22). Plaintiff was to continue on Abilify (R. 538).

On May 29, 2013, plaintiff noted some improvement to Vanecek and Dr. Capote and she had a PHQ-9 of 17 (indicating moderately severe depression) (R. 540; Docket No. 13, Pl. Memo. at 11). Plaintiff claimed to have auditory hallucinations but they are not command in nature and were better than they were in the past, and her concentration was diminished (R. 540). Vanecek advised plaintiff to stop taking Symbyax but to continue Abilify (R. 542).

On July 24, 2013, plaintiff had a PHQ-9 score of 19, and said she had thoughts that she would be better off dead or hurting herself (R. 544). She stated that she had one to two flashbacks a day of past molestation (R. 544; Docket No. 13, Pl. Memo. at 11-12). Her

7

hallucinations had completely dissipated since she started taking Fanapt (R. 544, 545) apparently in lieu of Abilify.  Plaintiff continued Symbyax 25 mg.-6 mg. capsule, 3 capsules per day and Fanapt (R. 546).

On August 6, 2013, plaintiff had a Mental Residual Functional Capacity questionnaire, in which plaintiff was found to be "limited but satisfactory" in several area (R. 514, 516, 19). There, Vanecek diagnosed bipolar disorder—depressed, assigning plaintiff a GAF score of 50 (R. 514, 518; Docket No. 13, Pl. Memo. at 5).  She made clinical findings that plaintiff had bipolar depressed, generalized anxiety, attention deficit disorder, metabolic disorder, and alcohol dependence in remission (R. 514; Docket No. 13, Pl. Memo. at 5).  Plaintiff's symptoms were anhedonia, appetite disturbance with weight change, decreased energy, thoughts of suicide, mood disturbance, difficulty thinking or concentrating, recurrent and intrusive recollections of a traumatic experience, emotional withdrawal or isolation, bipolar syndrome, hallucinations or delusions and emotional lability (R. 515; Docket No. 13, Pl. Memo. at 5).  Vanecek opined that plaintiff was seriously limited in her ability to make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. Vanecek also found plaintiff was limited in her ability to respond appropriately to changes in a routine work setting, dealing with normal stress.  Vanecek noted plaintiff was unable to meet competitive standards in her ability to ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes and interact appropriately with the general public.  (R. 516-17; Docket No. 13, Pl. Memo. at 5-6.)  Vanecek

8

assessed that plaintiff was not a malingerer and concluded that plaintiff would miss more than four days per month due to her impairments or treatment (R. 518; Docket No. 13, Pl. Memo. at 6).  In a statement of April 16, 2014, Dr. Capote adopted Ms. Vanecek's August 6, 2013, findings in this Mental Residual Functional Capacity Questionnaire (R. 561; Docket No. 13, Pl. Memo. at 6).  Dr. Capote concluded that "a return to full-time competitive employment" by plaintiff "would likely lead to a worsening of her symptomology" (R. 561).

The ALJ, however, gave no weight to Ms. Vanecek and Dr. Capote's opinions from the August 6, 2013, assessment (as later adopted by Dr. Capote) because the ALJ believed that the rest of the medical evidence contradicted that assessment (R. 21).  The ALJ did accept portions of the assessment finding that plaintiff was limited but satisfactory in several areas of ability to perform unskilled work (R. 19, 516).

Back in September 27, 2013, plaintiff was examined and stated that "things have been extremely difficult lately," with plaintiff believing that she suffered from schizophrenia or schizoaffective disorder, claiming that she hears conversations and feels delusional (R. 548). Vanecek, however, found that plaintiff heard voices but found no evidence of delusions (R. 549). Plaintiff had a PHQ-9 score that was at 20, indicative of severe depression (R. 548; Docket No. 13, Pl. Memo. at 12).  Plaintiff complained of irritability, anxiety, and delusions, and experienced panic attacks outside of her house (R. 548; Docket No. 13, Pl. Memo. at 4). Plaintiff's symptoms included anhedonia, depressed feelings, trouble falling asleep and staying asleep, little energy, and feeling like a failure (R. 548; Docket No. 13, Pl. Memo. at 4). Vanecek observed plaintiff's depressed mood, labile and irritable affect, and diminished

concentration (R. 549-50; Docket No. 13, Pl. Memo. at 4). Plaintiff's dosage of Symbyax was decreased and her dosage of Fanapt was increased (R. 550).

On December 23, 2013, plaintiff reported that things were going well for her (R. 552, 19; cf. Docket No. 13, Pl. Memo. at 10), with a PHQ-9 score of 8 (or mild depression). She denied having recent concerns with auditory or visual hallucinations (R. 552). Dent continued her prescriptions for Symbyax and Fanapt (R. 554).

On February 24, 2014, Vanecek conducted a mental health status examination of plaintiff and found plaintiff's mental condition to be unremarkable (R. 556, 558, 19; see Docket No. 13, Pl. Memo. at 10), noting that plaintiff's PHQ-9 score was 4 (minimal depression) (R. 556). Plaintiff continued on Symbyax and Fanapt (R. 558).

Meanwhile, Dr. Seth Anupa evaluated plaintiff for pain management on June 24, 2013 (R. 508; Docket No. 13, Pl. Memo. at 5). Plaintiff complained of mid to lower back pain radiating down her leg (R. 508; Docket No. 13, Pl. Memo. at 5). Plaintiff then weighed 221 pounds and had a BMI of 38.6 (R. 508; Docket No. 13 Pl. Memo. at 5). A lumbar spine MRI revealed central and left disc herniation asymmetrical to the left extending mostly into the epidural fat and borderline disc bulge at L4-L5 (R. 510; Docket No. 13, Pl. Memo. at 5). The doctor found that plaintiff's range of motion of the lumbar spine was limited in flexion extension and lateral rotation, tenderness was elicited in the lower lumbar and mid thoracic spine and positive straight leg-raising test on the left side (R. 511; Docket No. 13, Pl. Memo. at 5). The doctor diagnosed bipolar disorder, degeneration of lumbar intervertebral disc and lumbar disc prolapse with radiculopathy (R. 511; Docket No. 13, Pl. Memo. at 5).

The ALJ, considering the evidence, found that plaintiff's statements concerning intensity, persistence, and limiting effects of her symptoms were "not entirely credible" based upon the evidence in the record of her ability to perform activities of daily living, medication controlling her anxiety and depression, and otherwise "unremarkable" mental status examinations or her self-reports of things going well in December 2013 and February 2014 (R. 19).  Although plaintiff reported her back pain, the ALJ noted that she did not follow up with physical therapy or epidural injections and the examinations revealed "incomplete or lack of effort" (R. 19).  The ALJ gave significant weight to the findings of consultative examiner Dr. Balderman (R. 19-20) and the psychiatric evaluation of Dr. Santarpia (R. 20).

*Residual Functional Capacity*

The ALJ thus found that plaintiff has a residual functional capacity that she could perform sedentary work, except plaintiff should not perform complex work requiring simultaneous processing of work tasks, that she have no more than occasional contact with co-workers, supervisors, or the public (R. 15).  Posing hypotheticals to the vocational expert of a claimant similar to plaintiff in residual functional capacity, age, and work history, the expert opined that such a claimant could perform such occupations as cuff folder (sedentary, unskilled), painter (sedentary, unskilled), or envelope addresser (sedentary, unskilled) (R. 26).  Each of these occupations have positions in the national economy (R. 26).  Thus, the ALJ found that plaintiff was not disabled (R. 26-27).

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence.  See 42 U.S.C.

11

§ 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467.   If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992).   However, it should be noted that the ALJ has an affirmative duty to fully develop the record.   Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

In order to determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past.   20 C.F.R. §§ 404.1520(e) & 416.920(e).   When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work."   See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994).   The ALJ must then determine the

13

individual's ability to return to past relevant work given the claimant's residual functional capacity.  Washington, supra, 37 F.3d at 1442.

*Application*

In the instant case, plaintiff argues that substantial evidence does not support ALJ's evaluation of the opinion evidence from treating physician and sources, namely Dent's Dr. Capote and Ms. Vanecek (Docket No. 13, Pl. Memo. at 9-15; cf. R. 19).  Plaintiff argues that her treatment for her mental condition from June 2012 to December 2013 shows her disability (Docket No. 13, Pl. Memo. at 10-12).  Plaintiff claims that she might be entitled to a closed period of benefits, for August 14, 2012, to September 27, 2013, that the ALJ failed to consider (id. at 12).  The ALJ found that plaintiff was capable of performing daily activities, including caring for her three young children, that she reported in December 2013 that things were going well, and her February 2014 mental status examination was unremarkable (R. 19; Docket No. 13, Pl. Memo. at 10).  Plaintiff reviewed the timeline from June 2012 to December 2013 to show plaintiff's mental state (Docket No. 13, Pl. Memo. at 10-12).  Plaintiff next argues that the ALJ erroneously rejected Dr. Capote's opinion (id. at 12-13).  She also asserts that the ALJ next failed to consider plaintiff's obesity, given that her BMI was on a range between 33.8 and 37.4 (id. at 15-16; R. 390, 474, 489).  Finally, plaintiff contends that the record does not support the ALJ's credibility assessment (Docket No. 13, Pl. Memo. at 17-20; R. 19).

Defendant Commissioner upholds the findings of the ALJ, since the ALJ appropriately weighed the opinion evidence in this record and properly did not consider plaintiff for a closed period of disability (Docket No. 16, Def. Memo. at 4-6).  The Commissioner argues that there is

no evidence that plaintiff's obesity affected her basis work activities to deem her disabled due to her obesity, furthermore, no physician-diagnosed plaintiff's obesity, and the ALJ observed plaintiff's appearance and build and not merely the raw BMI score in determining whether she was obese (id. at 6-7). Defendant argues that the ALJ properly considered plaintiff's credibility in assessing her subjective complaints (id. at 7-9).

In her reply, plaintiff concludes that the ALJ did not comply with the treating physician rule (Docket No. 17, Pl. Reply at 1-4). She contends that the ALJ erred in not considering Dr. Capote's opinion that plaintiff's mental impairments would worsen if she returned to work (id. at 4-5; R. 561 (Apr. 16, 2014, note adopting findings of Allyson Vanecek)).

I.   Substantial Evidence and Plaintiff's Credibility

Plaintiff's claims here turn on the findings of Dr. Capote and Ms. Vanecek, including plaintiff's characterization of her condition during her appointments with them, which, in turn, was affected by her credibility. The findings of a treating physician as to the severity of an impairment must be accorded controlling weight if well-supported by the medically accepted techniques and is not inconsistent with the other substantial evidence in the record, 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (Docket No. 13, Pl. Memo. at 9). If that opinion is not given "controlling" weight, the ALJ must considered several factors in establishing the weight to be afforded that opinion, considering such things as relevant evidence, consistency of the opinion with the record as a whole, the specialty of that physician, see Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008); 20 C.F.R. § 416.927(c)(1)-(6) (id. at 10).

Plaintiff's mental condition between August 14, 2012, and September 27, 2013, became worse, noted in her examinations at Dent by Dr. Capote and Ms. Vanecek. The ALJ

15

emphasized that plaintiff reported feeling better during this period despite the findings of the Dent medical personnel to the contrary, rejecting Vanecek's findings because they were contradicted by the medical record (R. 21; see Docket No. 16, Def. Memo. at 5). The ALJ points to the effectiveness of medication plaintiff took for ADHD and depression during this period (R. 21-22). The ALJ, however, cited medical reports from prior to this period; he cited Pembroke Family Medicine examination on July 9, 2012 (R. 425-27, 21-22), as well as Dr. Santarpia's evaluation of June 14, 2012 (R. 412, 414, 20; cf. Docket No. 17, Pl. Reply Memo. at 1-2) and subsequent mental examinations.

    The ALJ did review plaintiff's medical record from August 2012 to September 2013 as compared with Vanecek and Dr. Capote's findings. Examining this period, this Court finds that Dr. Capote and Vanecek's findings are consistent with plaintiff's medical record, namely that plaintiff incrementally got better or worse during that period, with plaintiff complaining of hallucinations, irritability, and anxiety during that time. The ALJ erred in concluding that these opinions were inconsistent with the rest of the record during this period. The ALJ selectively rejected portions of the August 6, 2013, mental health assessment (R. 514-16) while adopting favorable findings as to plaintiff's ability to perform unskilled work.

    Many of plaintiff's complaints about hallucinations come from her reports to medical staff. This, her patient health questionnaire answers, and her complaints about stressors in her life (R. 20), turn on plaintiff's credibility as to the intensity of her condition. The Dent medical staff prescribed Symbyax, Abilify, and later Fanapt to address plaintiff's mental condition, adjusting dosages as plaintiff complained that lower dosages of Symbyax were not working. During this period, plaintiff's Patient Health Questionnaire score increased from 13 (indicating

16

moderate depression) to 20 (indicating severe depression) (R. 536, 548; Docket No. 13, Pl. Memo. at 4, 11, 12).   During this closed period, plaintiff suffered from bipolar disorder with hallucinations with variable results from plaintiff taking medication.   This excludes the later period where medication controlled plaintiff's condition (cf. Docket No. 16, Def. Memo. at 6). The ALJ erred in not considering whether plaintiff was disabled during this closed period rather than from the onset date forward.

Thus, this matter should be remanded to reexamine Dr. Capote and Ms. Vanecek's opinions during 2012-13.

II.     Plaintiff's Obesity

Defendant Commissioner argues that no physician diagnosed plaintiff's obesity (Docket No. 16, Def. Memo. at 6-7).   As defendant notes (id. at 7), under Social Security policy the Commissioner "will generally rely on the judgment of a physician who has examined the claimant and reported his or her appearance and build, as well as weight and height," SSR 02-1p. Dr. Capote here, however, diagnosed plaintiff as being morbidly obese, weighing 225 pounds on August 14, 2012 (R. 458, 456).   Plaintiff was 5'4" and weighed between 209-34 pounds with a BMI over 33 (R. 533, 508, 458, 417, 474, 489).   Doctors diagnosed plaintiff with degenerative disc disease later found to be a severe impairment (R. 12) and the ALJ considered her ankle fracture.   Obesity could complicate these severe impairments but the ALJ did not consider her obesity.   Although the ALJ found that plaintiff's condition did not meet Listing 1.04 requirements, the ALJ should consider whether plaintiff's obesity worsened her spinal condition, which, in turn, may have affected her ability to perform basic work activities.   This matter **should be remanded for the ALJ to consider the impact of plaintiff's obesity on her spine**.

## CONCLUSION

For the foregoing reasons, this Court recommends that the decision of the Commissioner be **REVERSED** and this matter be **REMANDED** for further administrative proceedings. Defendant's motion for judgment on the pleadings (see Docket No. 16) should be **DENIED** and plaintiff's motion for similar relief in her favor (Docket No. 13) should be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72(b).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate

Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72(b), "[w]ritten objections to proposed findings of fact and recommendations for disposition submitted by a Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72(b) may result in the District Court's refusal to consider the objection.**

So Ordered.

*s/Hugh B. Scott*

Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
January 4, 2018